1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

WASHINGTON STATE REPUBLICAN
PARTY, et al.,

                Plaintiffs,

and

WASHINGTON STATE DEMOCRATIC
CENTRAL COMMITTEE, et al.,

            Plaintiff Intervenors,

and

LIBERTARIAN PARTY OF
WASHINGTON STATE, et al.,

            Plaintiff Intervenors,

v.

DEAN LOGAN, King County Records &
Elections Division Manager, et al.,

            Defendants,

STATE OF WASHINGTON,

           Defendant Intervenors,

and

WASHINGTON STATE GRANGE,

           Defendant Intervenors.

No. C05-927Z

ORDER

ORDER – 1

# I.      Introduction

On May 19, 2005, the Washington State Republican Party (the "Republican Party") filed this action against Dean Logan, King County Records and Elections Division Manager and the Auditors of eight other counties.  Complaint, docket no. 1.  The Republican Party's Complaint challenges Initiative 872 on the basis of the First and Fourteenth Amendments to the United States Constitution.  The Washington State Democratic Central Committee (the "Democratic Party") and the Washington State Libertarian Party (the "Libertarian Party") have now intervened as Plaintiffs and also contend that Initiative 872 is unconstitutional. See docket nos. 2, 3.

Plaintiff Republican Party contends that Initiative 872 is unconstitutional because the Initiative prevents voters who share party affiliation from selecting their party's nominees. The Republican Party also alleges that Initiative 872 forces the Party to be associated publicly with candidates who have not been nominated by the Party, who will alter the political message and agenda the Party seeks to advance, and who will confuse the voting public with respect to what the Party and its adherents stand for.

The Democratic Party contends portions of Initiative 872 are unconstitutional to the extent that they authorize the County Auditors to permit non-affiliates of the Democratic Party to participate in its nomination process, and to the extent Initiative 872 allows cross-over voting in violation of the Party's associational rights.

The Libertarian Party claims that Initiative 872 is unconstitutional because it "places impermissible limits on access to the general election ballot" contrary to the United States Constitution, and allows a person to appropriate the Libertarian Party label without compliance with its nominating rules and without allowing the Party to define what the Party label means.

ORDER – 2

1    The State of Washington and the Washington State Grange (the "Grange") have also

2  intervened as Defendants.  <u>See</u> Order, docket no. 30; <u>see</u> <u>also</u> Minute Entry, docket no. 45.

3  The State of Washington and the Grange contend that Initiative 872 is constitutional.

4    This case presents a classic conflict between the rights of the voters to establish by

5  initiative a new system for conducting primaries and general elections for partisan offices,

6  and the rights of political parties to control the nomination of partisan candidates for elective

7  office and to protect their rights of association.  Primaries constitute a "crucial juncture" in

8  the elective process and a "vital forum" for expressive association among voters and political

9  parties.  <u>Clingman v. Beaver,</u> ___ U.S. ___, 125 S. Ct. 2029, 2042 (May 23, 2005)

10  (O'Connor, J., concurring).  The voters by Initiative 872 seek to create a system "that best

11  protects the rights of voters to make such choices, increases voter participation, and advances

12  compelling interests of the state of Washington."  Initiative 872, Sec. 2.[1]

13    Plaintiffs seek to have Initiative 872 declared unconstitutional under the United States

14  Constitution as constituting an illegal nomination process, as requiring an unconstitutional

15  "forced association," and for violating equal protection under the law.  The recent

16  invalidation of the Washington blanket primary forced Washington voters to choose between

17  two strikingly different versions of a primary election.  The voters were forced to choose

18  between voter choice and party nominations, and the voters chose voter choice.

19    In considering the issues presented in this case, the Court does not begin with a clean

20  slate.  Rather, the United States Constitution and binding court precedent have created the

21  landscape for deciding these important issues.

22

23

24

---

25    [1] The Text of Initiative 872 can be found at Wash. Rev. Code. Ann. § 29A.52 (West
Supp. 2005).  Throughout this Order, the Court will cite to the text of Initiative 872 as
26  "Initiative 872, Sec. __".

ORDER – 3

1   ## II.   History of Washington's Primary Process

2       For over 100 years, Washington has had a partisan election system.  Historically,

3   voters at the general election were provided a choice between representatives of each

4   qualifying political party.  From 1890 through 1907, candidates for partisan offices were

5   chosen either by convention or by petition.  In 1907, the Washington State Legislature

6   established the first direct primary system for partisan candidates, requiring political parties

7   to choose their representative through a public primary.  See State ex rel. Wells v. Dykeman,

8   70 Wash. 599 (1912).  In this system separate ballots were printed for each political party

9   and voters could only cast ballots in one party's primary.

10      Washington State's "blanket primary"[2] system was first established in 1935.  Except

11

12      [2] In a "closed" primary, only voters who register as members of a party may vote in
    primaries to select that party's candidates.  In an "open" primary, the voter can choose the ballot
    of any party but then is limited to the candidates on that party's ballot.  In a "blanket primary,"
13  a voter can vote for candidates of any party on the same ballot.  In a "nonpartisan blanket
    primary," voters can vote for anyone on the primary ballot, and the top vote-getters, regardless
14  of party, run against each other in the general election.  See Reed v. Democratic Party of Wash.,
    343 F.3d 1198, 1203 (9th Cir. 2003).

15

16      Currently, thirty seven states conduct some type of closed primary.  Ala. Code § 17-16-
    14(b); Alaska Stat. § 15.25.010; Ariz. Rev. Stat. § 16-467; Ark. Code Ann. §§ 7-7-307, 7-7-308;
    Cal. Elec. Code § 2151; Colo. Rev. Stat. §§ 1-7-201, 1-2-218.5; Conn. Gen. Stat. § 9-431; Del.
17  Code Ann. tit. 15,  § 3161; Fla. Stat. Ann. § 101.021; 10 Ill. Comp. Stat. 5/7-43(a); Ind. Code
    § 3-10-1-6; Iowa Code Ann. §§ 43.41, 43.42; Kan. Stat. Ann. § 25-3301; Ky. Rev. Stat. Ann.
18  § 116.055; Me. Rev. Stat. Ann. tit. 21-A, § 340; Md. Code Ann., Election Law, § 8-802; Mass.
    Gen. Laws Ann. ch. 53 § 37; Miss. Code Ann. § 23-15-575; Neb. Rev. Stat. § 32-912; Nev. Rev.
19  Stat. 293.287; N.H. Rev. Stat. Ann § 654.34(II); N.J. Stat. Ann. § 19:23-45.1; N.M. Stat. Ann.
    § 1-12-7; N.Y.  Elec. Laws § 1-104(9); N.C. Gen. Stat. § 163-59; Ohio Rev. Code Ann.
20  § 3513.19; Okla. Stat. tit. 26, § 1-104; Or. Rev. Stat. § 254.365; 25 Pa. Cons. Stat. Ann. § 2832;
    R.I. Gen. Laws §§ 17-15-21, 17-15-24, 17-9.1-23; S.C. Code Ann. § 7-9-20; S.D. Codified Laws
21  § 12-6-26; Tenn. Code Ann. § 2-7-115; Tex. Elec. Code Ann. §§ 162.003, 162.012, 162.013;
    Utah Code Ann. §§ 20A-3-104.5, 20A-3-202; W. Va. Code § 3-1-35; Wyo. Stat. Ann. § 22-5-
22  212.

23      Eleven states conduct open primaries.  Ga. Code Ann. § 21-2-224; Haw. Rev. Stat. § 12-
    31; Idaho Code §§ 34-402, 34-404, 34-904; Mich. Comp. Laws § 168.576; Minn. Stat.
24  § 204D.08; Mo. Rev. Stat. § 115.397; Mont. Code Ann. § 13-10-301; N.D. Cent. Code § 16.1-
    11-22; Vt. Stat. Ann. tit. 17, § 2363; Va. Code Ann. §  24.2-530; Wis. Stat. §§ 5.37, 6.80.

25

26      Two states conduct so-called nonpartisan blanket primaries.  Louisiana is the only state
    other than Washington to conduct such a primary.  La. Rev. Stat. Ann. §§ 18:401, 18:481,

1   for presidential primaries,[3] all properly registered voters could vote for their choice at any

2   primary for "any candidate for each office, regardless of political affiliation and without a

3   declaration of political faith or adherence on the part of the voter." Wash. Rev. Code Ann.

4   § 29.18.200 (West 2003). As a result, each voter received a ballot listing all candidates of all

5   parties and could vote for any candidate as opposed to getting an exclusively Republican,

6   Democratic, or other party ballot. Under the blanket primary system, voters could choose

7   candidates from some parties for some positions, others for other positions, and engage in

8   cross-over voting or "ticket splitting." Wash. Rev. Code Ann. § 29.18.200 (West 2003).

9   Under the blanket primary system, minor parties selected their nominees at conventions prior

10  to the date of the primary. Wash. Rev. Code Ann. § 29.24.020 (West 2003). These

11  nominees would be placed on the ballot for the primary election. To be placed on the

12  general election ballot, under the prior blanket primary procedure, minor party nominees had

13  to receive a number of votes equal to at least one percent of the total number cast for all

14  candidates for that position. Wash. Rev. Code Ann. § 29.30.095 (West 2003).[4]

15      In 2000, the United States Supreme Court held that California's blanket primary,

16  similar in many respects to Washington's blanket primary, was unconstitutional. California

17  Democratic Party v. Jones, 530 U.S. 567 (2000). The Supreme Court held that the California

18  blanket primary placed a severe burden on political parties' right of association, was not

19  _____

20  18:482.

21      All states but Louisiana and Washington limit voters to voting in only one political
    party's primary.

22      [3] None of the primary systems addressed in this Order affect Presidential and Vice
    Presidential primaries. These primaries are addressed by a separate system found in Wash. Rev.
23  Code § 29A.56.010, et seq.

24      [4] A "'major political party' [is] a political party of which at least one nominee for
    president, vice president, United States senator, or a statewide office received at least five
25  percent of the total vote cast at the last preceding state general election in an even-numbered
    year." Wash. Rev. Code § 29A.04.086. A minor political party is "a political organization other
26  than a major political party." Wash. Rev. Code § 29A.04.097.

ORDER – 5

1  narrowly tailored to achieve a compelling state interest, and was therefore unconstitutional.

2  Id. at 582-85.

3      In 2003, relying on Jones, the Ninth Circuit Court of Appeals held that Washington's

4  blanket primary system was unconstitutional in Democratic Party of Washington v. Reed,

5  343 F.3d 1198 (2003), cert. denied, 540 U.S. 1213 (2004).  The Ninth Circuit stated that

6  Washington's primary system was "materially indistinguishable" from the invalidated

7  California system.  Id. at 1203.  As a result, Washington's blanket primary that had been

8  used for over sixty-five years was held unconstitutional and the State was legally enjoined

9  from "conducting the challenged primary in future elections."  Amended Judgment,

10 Washington State Democratic Party v. Reed, No. C00-5419FDB (W.D. Wash. May 13,

11 2004).

12     On January 8, 2004, the Grange filed Initiative 872 with the Secretary of State (the

13 "Secretary").[5]  Dembowski Decl., docket nos. 68 and 69, Ex. F.  Initiative 872 proposed a

14 "top two" primary system in which a properly registered voter has "the right to cast a vote

15 for any candidate for each office without any limitation based on party preference or

16 affiliation of either the voter or the candidate."  Initiative 872, Sec. 5.[6]  Initiative 872 defines

17 _____

18     [5] The Washington Constitution was amended in 1912 to allow direct government by the
people in the form of popularly enacted initiatives and referendums on laws passed by the
19 Legislature. Wash. Const. art. II, § 1 ("the people reserve to themselves the power to propose
bills, laws, and to enact or reject the same at the polls, independent of the legislature, and also
20 reserve power, at their own option, to approve or reject at the polls any act, item, section, or part
of any bill, act, or law passed by the legislature").  The initiative process allows the electorate
21 to petition to place proposed legislation on the ballot.  If the initiative's supporters timely file
a petition with signatures of legal voters equaling eight percent of the votes cast for the office
22 of governor at the last regular gubernatorial election, the proposed legislation is placed on the
ballot. Wash. Rev. Code §§ 29A.72.150, 29A.72.250.  Voters are then able to directly vote on
23 the proposed legislation at the next general election or special election called by the Legislature.
Since the State adopted the initiative process in 1912, voters have approved sixty-one statewide
24 initiatives.

25     [6] The primary system proposed by Initiative 872 has been referred to as the "modified
blanket primary," the "People's Choice Initiative," and the "top two" primary.  For purposes of
this Order the Court will refer to the primary system under attack in this litigation as simply
26 Initiative 872.

ORDER – 6

1   a partisan primary as a "procedure for winnowing candidates for public office to a final list

2   of two as part of a special or general election." Id.

3       While sponsors of Initiative 872 were gathering signatures,[7] the Washington State

4   Legislature was faced with the task of developing a new primary system in Washington State

5   after the Reed decision invalidated the blanket primary.  On March 10, 2004, the Legislature

6   enacted a bill which would have provided for two alternative primary systems.  E.S.B. 6453,

7   58th Leg., 2004 Reg. Sess. (Wash. 2004).  Part I of the bill provided for a "Louisiana" style

8   primary system, commonly referred to as the "top two" approach.  See id., Part I.  Under the

9   top two approach, a registered voter would be permitted to cast a vote for each office

10  appearing on the ballot without any limitation based on the party preference of either the

11  voter or the candidate.  Id., § 5.  The top two candidates would then proceed to the general

12  election.[8]

13      Aware that the political parties would probably challenge the constitutionality of the

14  top two system, the Legislature also enacted a "backup plan" to take effect if the top two

15  system was invalidated.  Id., Part II.  Under this alternative, also referred to as the "Montana

16  system," candidates qualify for the general election through a process in which voters are not

17  required to register with a party, but choose among candidates of a single party.  Their

18  choice of the ballot selected is not public.  Under this backup plan, major political party

19  candidates for partisan offices would be nominated by way of a primary election in which a

20  voter would have to choose a political party's ballot and could only vote for candidates on

21

22  ────────────────

23  [7] To begin the process of placing a proposed initiative on the ballot, a legal voter must file with the Secretary a legible copy of the proposed measure accompanied by an affidavit that the proposer is a legal voter and the requisite filing fee.  Wash. Rev. Code § 29A.72.010.  This filing must be made within ten months of the date of the election at which the measure is to be submitted to a vote.  Wash. Rev. Code § 29A.72.030.

24

25

26  [8] The top two system passed by the Legislature is similar, although not identical, to the primary system proposed in Initiative 872.

ORDER – 7

that party's ballot.  Id., § 126.[9]  Under the Montana system, minor party candidates would be nominated by a party nominating convention, Wash. Rev. Code § 29A.20.121(1), and the minor party candidate selected would be placed on the ballot for the general election.  Wash. Rev. Code §§ 29A.20.121; 29A.20.141.  Minor party candidates will appear only on the general election ballot under the Montana system.

On April 1, 2004, Governor Gary Locke vetoed the top two approach.  E.S.B. 6453, 58th Leg., 2004 Reg. Sess. (Wash. 2004) (Governor's Veto Message).  As a result, the Montana primary system took effect and was used by Washington voters in the primary election in the fall of 2004.

On November 2, 2004, Initiative 872 was approved by the voters by almost 60 percent.  Dembowksi Decl., docket nos. 68 and 69, Ex. J (Washington State Election Measures Results).  Initiative 872 became effective on December 2, 2004, thirty days after it was approved in the 2004 general election.  Wash. Const. art. II, § 1.[10]

Initiative 872 provides the process for the selection of candidates for partisan office in Washington.  A "major political party" means a political party of which at least one nominee for President, Vice President, United States Senator, or a statewide office received at least five percent of the total vote cast at the last preceding state general election in an even numbered year.  Wash. Rev. Code § 29A.04.086.  A "minor political party" is any political organization other than a major political party.  Wash. Rev. Code § 29A.04.097.

Initiative 872 did not explicitly amend or repeal any sections of the Revised Code of Washington regulating the nomination of minor party candidates.  Initiative 872, Sec. 17; Wash. Rev. Code §§ 29A.20.110 - 29A.20.201.  The party nominating procedures

_____

[9] Under the categories of primary the Court has identified, the Montana primary system can be categorized as an open primary.

[10] Initiative 872 also does not amend the statutes governing how the special primary for the office of U.S. President will be conducted.  The Presidential election process, involving nominations by the national parties, is not subject to state-by-state regulation.

ORDER – 8

1  established by the Montana primary system were not in existence at the time Initiative 872

2  was filed, making it impossible for the Initiative to have repealed or otherwise addressed

3  these procedures.  In addition, Initiative 872 did not refer to, repeal, or amend related

4  sections of the Revised Code of Washington in existence at the time of the filing of the

5  Initiative in January 2004.  These provisions, which were part of the blanket primary, <u>see</u>

6  Wash. Rev. Code Ann. §§ 29.24.020, 29.30.005, 29.30.095 (West 2003), provided in

7  substance that minor party candidates would be nominated at party conventions.  If a minor

8  party candidate received one percent of the vote in the primary, that candidate would appear

9  on the general election ballot.[11]

10      In the 2005 legislative session, the Secretary sponsored legislation in both the State

11  House and the Senate to "implement" Initiative 872.  <u>See</u> H.B. 1750, 59th Leg., 2005 Reg.

12  Sess. (Wash. 2005); S.B. 5745, 59th Leg., 2005 Reg. Sess. (Wash. 2005).  These bills would

13  have eliminated minor party nominating conventions, other than for President and Vice

14  President.  H.B. 1750, Sec. 9.  The Legislature did not enact any legislation dealing with

15  Initiative 872 in 2005.[12]

16      On May 18, 2005, the Secretary adopted emergency regulations relating to primary

17  elections in Washington.  One of these regulations, Wash. Admin. Code § 434-215-015,

18  purports to abolish the minor party convention rights that were not addressed in the text of

19

20      [11] The <u>Reed</u> court decision did not address the provisions relating to minor party
21  candidates.

22      [12] E-mail correspondence from individuals within the state government indicates that at
least some believed any changes made to Initiative 872 would have to be made by a two-thirds
23  majority vote of the Legislature.  Hansen Decl., docket no. 64, Ex. 3 at 22-23 (E-mail from Rep.
Kathy Haigh to Bob Terwilliger).  Another internal e-mail indicates that some state legislators
24  believed that any legislation that would change the minor party nominating procedure would also
have to pass by a two-thirds majority.  <u>Id.</u> at 26 (E-mail from John Pearson to Katie Blinn).
25  Article II, Section 41, of the Washington State Constitution provides that no act, law or bill
enacted by a majority of voters can be amended or repealed within two years of its enactment
26  except by a two-thirds vote of the Legislature.  Wash. Const. art. II, § 41.

ORDER – 9

1   Initiative 872 or by the Washington Legislature during 2004.  Pharris Decl., docket no. 66,

2   Ex. C (New Section: WAC 434-215-015).

3   **III.   Issues Presented and Relief Requested**

4          Pursuant to the Court's request, the parties have stipulated that the following legal

5   issues should be addressed at this time.

6          1.      Does the primary system established by Initiative 872 nominate political party

7                  candidates for public office?

8          2.      If the primary system under Initiative 872 does not nominate political party

9                  candidates for public office, does each political party have the right to select for

10                 itself the only candidate who will be associated with it on either a primary or

11                 general election ballot?

12         3.      If the primary system under Initiative 872 nominates political party candidates

13                 for public office, does Initiative 872 violate the First Amendment by compelling

14                 a political party to associate with unaffiliated voters and members of other

15                 political parties in the selection of its nominees?

16         4.      Does Washington's filing statute impose forced association of political parties

17                 with candidates in violation of the parties' First Amendment associational

18                 rights?

19         5.      Does Initiative 872's limitation of access to the general election ballot to only

20                 the top two vote-getters in the primary for partisan office unconstitutionally

21                 limit ballot access for minor political parties?

22  See Stipulated Statement of Legal Issues, docket no. 40.  In addition, the parties have briefed

23  the issue of whether Initiative 872 is severable if the Court finds portions of the Initiative

24  unconstitutional.  Plaintiffs Republican Party, Democratic Party and Libertarian Party move

25  the Court for Summary Judgment in their facial challenge to Initiative 872.

26

ORDER – 10

1   Plaintiff Republican Party asks the Court for a ruling as a matter of law that Initiative

2   872 and Washington's filing statutes, Wash. Rev. Code §§ 29A.24.030, 29A.24.031, impose

3   an unconstitutional burden on First Amendment rights.  Plaintiff moves for a permanent

4   injunction preventing any partisan election pursuant to Initiative 872, or the identification of

5   any candidate as "Republican," if not authorized by the Republican Party.

6   Plaintiff Democratic Party asks the Court for a ruling as a matter of law that Initiative

7   872 burdens First Amendment rights by (1) allowing any candidate, regardless of their party

8   affiliation or relationship to the party, to self-identify as a member of a political party and to

9   appear on the primary and general election ballots as a candidate for that party; and (2)

10  allowing any voter, regardless of party affiliation, to vote for any political party candidate in

11  the primary election.  Plaintiff moves for a permanent injunction preventing the State of

12  Washington or any political subdivision of the State from enforcing or implementing Initiative

13  872 at any primary or general election.

14  Plaintiff Libertarian Party asks the Court for a ruling as a matter of law that Initiative

15  872 and Washington's filing statutes, Wash. Rev. Code §§ 29A.24.030, 29A.24.031, impose

16  an unconstitutional burden on First Amendment rights and unconstitutionally limit minor

17  party ballot access.  Plaintiff moves for a permanent injunction preventing a partisan election

18  under Initiative 872; the identification as "Libertarian" of any unauthorized candidate; and

19  any election which requires more than a "modicum of support" to secure general election

20  ballot access.

21  The State of Washington and the Grange oppose Plaintiffs' Motions for Summary

22  Judgment and the relief requested by the Plaintiffs.  The Defendants contend Initiative 872

23  does not impose a burden on First Amendment associational rights, and request the Court

24  enter an Order and Judgment in their favor.

25

26

ORDER – 11

1   **IV.   Supplemental Request**

2          In addition to the issues addressed in opening briefs, the Republican Party submitted a

3   Supplement to its Motion for Summary Judgment, docket no. 63.  In the Supplement, the

4   Republican Party requests a finding that Initiative 872 is unconstitutional because it violates

5   the right to equal protection under the law, in violation of the United States Constitution.  The

6   Republican Party contends that "Initiative 872 violates the Equal Protection clause by

7   allowing minor political parties to nominate candidates and control their message, but denying

8   the same right to the [major political parties.]"  See Republican Supplement, docket no. 63,

9   at 4.

10         The Republican Party's Supplement was filed on June 23, 2005, after the deadline for

11  Opening Briefs.  The State of Washington has moved to strike the Republican Party's

12  Supplement, see Motion to Strike, docket no. 65, and argues the Supplemental filing is

13  untimely and prejudicial.  Id. at 10.  The Republican Party argues that the Court should

14  consider its additional argument and notes that its equal protection argument was raised in its

15  Complaint, docket no. 1, at ¶¶ 22-23, and previous Motion for Preliminary Injunction, docket

16  no. 7, at 10.

17         The Court finds that the Republican's Supplement to Summary Judgment Motion,

18  docket no. 63, provided adequate notice to the Defendant State of Washington and the

19  Defendant Washington State Grange.  The Supplement raises important issues of equal

20  protection related to the treatment of minor parties under Initiative 872.

21         The Court DENIES the Motion to Strike, docket no. 65.

22  **V.   Legal Standard**

23         This is a facial challenge to Initiative 872, which Plaintiffs allege burdens the exercise

24  of their First Amendment rights.  All parties agree that this facial challenge is ripe for

25

26

ORDER – 12

1    adjudication,[13] and that the alleged "threat" to the political parties' associational rights is more

2    than hypothetical.  The allegation of imminent injury to established First Amendment rights

3    warrants intervention by the federal courts.  See Buckley v. Valeo, 424 U.S. 1, 117 (1976).

4         Our constitutional system does not authorize the judiciary to sit as a superlegislature to

5    judge the wisdom or desirability of legislative or initiative policy decisions.  See Heller v.

6    Doe, 509 U.S. 312, 319 (1993).  Rather, courts must give state statutes and lawfully enacted

7    initiatives a strong presumption of validity.  See Broadrick v. Oklahoma, 413 U.S. 601, 611-

8    13 (1973).  The presumption of validity is especially strong in this case because Plaintiffs are

9    making a facial challenge to Initiative 872.  See United States v. Salerno, 481 U.S. 739, 745

10   (1987).

11        In a facial challenge, there is no analytic scheme whereby the political parties must

12   submit evidence establishing that they have been harmed.  See Reed, 343 F.3d at 1203.

13   Rather, the Court evaluates the challenged statute on its face, in light of the constitutional

14   burdens or infringements alleged.  Id.  Plaintiffs in this case allege that Initiative 872 burdens

15   their First Amendment associational rights by allowing non-affiliates of the party to

16   participate in a party's nominee selection process and forcing a party to associate with a

17   candidate other than those selected by the party.

18        Where a statutory scheme imposes a severe burden on core First Amendment rights,

19   the scheme must be found unconstitutional unless the State affirmatively demonstrates that

20

21

22

_____

23        [13] A statute may be challenged in two distinct ways.  First, a statute may be challenged
     on its face, whereby a court examines solely the text of the document to determine its
24   constitutionality.  Second, a statute may be challenged as it is applied.  In an "as applied"
     challenge, a court considers the constitutionality of a statute as it has been applied to the parties
25   to the action.  The Court has previously directed the parties to limit their briefs to Plaintiffs'
     facial challenge of Initiative 872.  The Court reserved issues related to Plaintiffs' as applied
26   challenge.

ORDER – 13

1   the scheme is narrowly tailored to advance a compelling state interest.[14]  Reed, 343 F.3d at

2   1204.  In Reed, the Ninth Circuit discussed the applicable framework for this Court's review:

3               This is a facial challenge to a statute burdening the exercise of a
            First Amendment right . . . .  In Jones, the Court read the state
4           blanket primary statutes, determined that on their face they restrict
            free association, accordingly subjected them to strict scrutiny, and
5           only then looked at the evidence to determine whether the State
            satisfied its burden of showing narrow tailoring toward a compelling
6           state interest.

7   343 F.3d at 1203.  A "[c]onstitutional challenge to specific provisions of a State's election

8   laws . . . cannot be resolved by any 'litmus-paper test' that will separate valid from invalid

9   restrictions."  Tashjian v. Republican Party of Conn., 479 U.S. 208, 213-14 (1986) (quoting

10  Anderson v. Celebrezze, 460 U.S. 780, 789 (1983) (internal citations and quotations

11  omitted)).

12              Instead, a court . . . must first consider the character and magnitude
            of the asserted injury to the rights protected by the First and
13          Fourteenth Amendments that the plaintiff seeks to vindicate.  It must
            then identify and evaluate the precise interests put forward by the
14          State as justifications for the burden imposed by its rule.  In passing
            judgment, the Court must not only determine the legitimacy and
15          strength of each of those interests, it must also consider the extent to
            which those interests make it necessary to burden the plaintiff's
16          rights.

17  Tashjian, 479 U.S. at 214 (quoting Anderson, 460 U.S. at 789).

18          The nature of the asserted First Amendment interest in this case is evident: "freedom to

19  engage in association for the advancement of beliefs and ideas is an inseparable aspect of the

20  'liberty' assured by the Due Process Clause of the Fourteenth Amendment, which embraces

21  freedom of speech."  Tashjian, 479 U.S. at 214 (quoting NAACP v. Alabama ex rel.

22  Patterson, 357 U.S. 449, 460 (1958)).  The freedom to join together in furtherance of common

23

24          [14] The State and the Grange argue that a facial challenge requires the challenger to
     establish "that no set of circumstances exists under which the Act would be valid."  E.g., State
25   Response, docket no. 65, at 4 (citing United States v. Salerno, 481 U.S. 739, 745 (1987)).
     Because Plaintiffs challenge to Initiative 872 raises First Amendment rights, the Court will
26   subject any restrictions on free association to strict scrutiny.  Reed, 343 F.3d at 1203.

ORDER – 14

1    political beliefs "necessarily presupposes the freedom to identify the people who constitute

2    the association." Tashjian, 479 U.S. at 214-15. "[A] corollary of the right to associate is the

3    right not to associate." Jones, 530 U.S. at 574 (emphasis added).

4    **A.    California Democratic Party v. Jones**

5        Prior to 1996, political party nominees in California were determined in a "closed"

6    partisan primary, in which only persons who were members of the political party (i.e., who

7    had declared affiliation with that party when they registered to vote) could vote for the party's

8    nominee. See Cal. Elec. Code Ann. § 2151 (West 1996).  In 1996, California voters adopted

9    Proposition 198, which changed the California partisan primary from a closed primary to a

10   blanket primary.  Under Proposition 198, "all persons entitled to vote, including those not

11   affiliated with any political party," had the right to vote "for any candidate regardless of the

12   candidate's political affiliation."  Cal. Elec. Code Ann. § 2001 (West Supp. 2000).  The

13   candidate of each party winning the greatest number of votes became "the nominee of that

14   party at the ensuing general election."  Cal. Elec. Code Ann. § 15451 (West 1996).

15   California law expressly provided that the name of the candidate of each party with the most

16   votes was the party's "nominee."  Id.  Proposition 198 was promoted as a measure that would

17   "weaken" party "hard-liners" and ease the way for "moderate problem-solvers."  See Jones,

18   530 U.S. at 570.  Four political parties brought suit in California alleging the blanket primary

19   adopted by Proposition 198 violated their First Amendment rights of association.

20       The United States Supreme Court in Jones recognized the "major role [the States have]

21   to play in structuring and monitoring the election process, including primaries," and the

22   State's ability to "require parties to use the primary format for selecting their nominees."

23   Jones, 530 U.S. at 572.  Nevertheless, the Court held the California blanket primary

24   unconstitutional.  The Supreme Court held that "when States regulate parties' internal

25   processes, they must act within the limits imposed by the Constitution."  Jones, 530 U.S. at

26   573.

ORDER – 15

> Representative democracy in any populous unit of governance is unimaginable without the ability of citizens to band together in promoting among the electorate candidates who espouse their political views.  The formation of national political parties was almost concurrent with the formation of the Republic itself. Consistent with this tradition, the Court has recognized that the First Amendment protects the freedom to join together in furtherance of common political beliefs, which necessarily presupposes the freedom to identify the people who constitute the association, and to limit the association to those people only.

Id. at 574.  The Jones Court held that "[i]n no area is the political association's right to exclude more important than in the process of selecting its nominee," id. at 575, and concluded that the ability of a political party to select its "own candidate," or "nominee," unquestionably implicates associational freedom.  See id. at 575-76.  Proposition 198, by allowing all voters to vote for any candidate regardless of political affiliation, violated the First Amendment associational rights of the political parties, and forced "political parties to associate with—to have their nominees, and hence their positions, determined by—those who, at best, have refused to affiliate with the party, and, at worst, have expressly affiliated with a rival."  Id. at 577.

## B.    Democratic Party v. Reed

Washington State's blanket primary differed from California's blanket primary in that it did not explicitly name the candidate of each party with the most votes as its "nominee." Compare Cal. Elec. Code Ann. § 15451.  Under Washington's blanket primary, "all properly registered voters" could vote at any primary "for any candidate for each office, regardless of political affiliation and without a declaration of political faith or adherence on the part of the voter."  Wash. Rev. Code Ann. § 29.18.200 (West 2003).  To reach the general election ballot, a candidate had to receive a plurality of the votes cast for candidates of his or her party, and at least one percent of the total votes cast at the primary for all candidates for that office.  Wash. Rev. Code Ann. § 29.30.095 (West 2003).

ORDER – 16

1    Because all candidates from all parties were listed on the primary ballot, and were

2    voted on by all registered voters, the Ninth Circuit concluded that Washington's blanket

3    primary was "materially indistinguishable" from California's blanket primary. Reed, 343

4    F.3d at 1203.  The Ninth Circuit held that Washington's blanket primary was "on its face an

5    unconstitutional burden on the rights of free association" of the political parties. Id. at 1207.

6    The State of Washington argued in Reed that Washington's blanket primary was

7    distinguishable from California's blanket primary because Washington does not register

8    voters by party, and because winners of the primary are "'nominees' not of the parties but of

9    the electorate." Id. at 1203.  As such, the State argued Washington's primary was a

10   nonpartisan blanket primary.  Id.  The Ninth Circuit disagreed, concluding that Washington's

11   blanket primary denied "party adherents the opportunity to nominate their party's candidate

12   free of the risk of being swamped by voters whose preference is for the other party." Id. at

13   1204.

14           The right of people adhering to a political party to freely associate
             is not limited to getting together for cocktails and canapés. Party
15           adherents are entitled to associate to choose their party's nominees
             for public office. * * * Put simply, the blanket primary prevents a
16           party from picking its nominees.

17   Id.  The Ninth Circuit concluded that the First Amendment's protection of freedom of

18   association required invalidation of Washington's blanket primary.  Id.  As a result,

19   Washington's blanket primary was held unconstitutional and the State was enjoined from

20   using the blanket primary system in the future.

21   **VI.    Analysis of Initiative 872**

22   **A.      Does the primary system established by Initiative 872 nominate political party
             candidates for public office?**

23
     The parties dispute whether the primary system under Initiative 872 "nominates"
24
     political party candidates for public office, and whether it violates the First Amendment
25

26

associational rights of the political parties.  This inquiry is important because under <u>Jones</u>,

primary voters at large may not choose a party's nominee.  530 U.S. at 585-86.

The 2004 Voters' Pamphlet description of Initiative 872 stated:

Initiative Measure No. 872 concerns elections to partisan offices.

This measure would allow voters to select among all candidates in a primary. Ballots would indicate candidates' party preference. The two candidates receiving most votes advance to the general election regardless of party.

Pharris Decl., docket no. 66, Ex. A (2004 Voters' Pamphlet at 10).

**1.      Statutory Modifications**

Initiative 872 added a new definition for "Partisan office" in Wash. Rev. Code

§ 29A.04, and modified the definition of "Primary" in Wash. Rev. Code § 29A.04.127, as

follows:

**Sec. 4.**  A new section is added to chapter 29A.04 RCW to read as follows:
"Partisan office" means a public office for which a candidate may indicate a political party preference on his or her declaration of candidacy and have that preference appear on the primary and general election ballot in conjunction with his or her name.  The following are partisan offices:
(1) United States senator and United States representative;
(2) All state offices, including legislative, except (a) judicial offices and (b) the office of superintendent of public instruction;
(3) All county offices except (a) judicial offices and (b) those offices for which a county home rule charter provides otherwise.

**Sec. 5**.  RCW 29A.04.127 and 2003 c 111 s 122 are each amended to read as follows:
"Primary" or "primary election" means a ((statutory)) procedure for ((nominating)) <u>winnowing</u> candidates ((to)) <u>for</u> public office ((at the polls)) <u>to a final list of two as part of a special or general election.  Each voter has the right to cast a vote for any candidate for each office without any limitation based on party preference or affiliation, of either the voter or the candidate.</u>

<u>See</u> Initiative 872, Secs. 4-5.  The State and County Auditors recognize no nomination

process for a major party other than by the primary.  White Decl., docket no. 8, Ex. 8 (County

Auditors "not aware of any language associated with the Initiative that contemplates a

1  partisan nominating process separate from the primary.").  Under Initiative 872, the only way

2  for a partisan candidate to reach the general election is through the "top two" primary.

3      The Grange alleges that the Initiative 872 primary "determines the two candidates or

4  <u>nominees</u> for the general election ballot, while allowing each candidate to disclose to the

5  voters his or her own political preference."  <u>See</u> Answer, docket no. 37, at ¶ 16 (emphasis

6  added).  Nevertheless, the Grange contends that determining the "candidates or nominees" for

7  the general election does not select the candidate or nominee for any political party.  <u>Id.</u>

8      The State of Washington argues that Initiative 872 does not "nominate" political party

9  candidates for public office, and does not create a nominating primary.  Rather, the State

10  contends that Initiative 872 makes "party nominations . . . irrelevant to qualifying candidates

11  to the ballot."  <u>See</u> State Response, docket no. 65, at 12.  The State urges that unlike a

12  "nominating" primary, Initiative 872 is a "winnowing" primary in which the primary voters

13  do not choose the party's nominee.  Changes by the Initiative to Wash. Rev. Code

14  § 29A.04.127 revised "nominating" to "winnowing."[15]  The Republican Party argues that

15  calling the primary a "winnowing primary," rather than a "nominating primary," does not

16  distinguish the Initiative 872 primary system from the blanket primaries rejected in <u>Jones</u> and

17  <u>Reed</u>, and does not change the fact that Initiative 872's primary nominates candidates.  All

18  Plaintiffs argue that the Court must analyze the framework of the Initiative, rather than

19

20      [15] However, similar changes were not made to other statutes which require the major parties to advance candidates for Congressional, State and County offices by means of these
21  partisan nominating primaries: "[m]ajor political party candidates for all partisan elected offices, except for president and vice president . . . must be nominated at primaries held under
22  this chapter."  Wash. Rev. Code § 29A.52.116; <u>see also</u> Wash. Rev. Code § 29A.52.111.  The State of Washington argues that Wash. Rev. Code § 29A.52.116 is "clearly inconsistent with the
23  system established under I-872, and should be regarded as obsolete."  <u>See</u> State Response, docket no. 65, at 19 n.16.  This provision could not have been expressly repealed by Initiative
24  872 because it was enacted <u>after</u> the filing of Initiative 872.  Plaintiffs rely on Wash. Rev. Code § 29A.52.116 as support for their argument that Initiative 872 is a "nominating" primary.  This
25  argument is unpersuasive because that statute had not even been enacted when the Initiative was filed.  However, for the reasons stated in this opinion the Court concludes that Wash. Rev. Code
26  § 29A.52.116 is not in conflict with the Initiative.

ORDER – 19

1  changes to statutory wording, in determining its effect and possible burden on First

2  Amendment rights.

3          The Republican Party notes that the State unsuccessfully proffered its "winnowing"

4  arguments in <u>Jones</u>.[16]  All Plaintiffs suggest the change of "nominating" to "winnowing" is a

5  change without a difference.  The Democratic Party argues that Initiative 872 engages in

6  "word-play," attempting to transform the constitutionality of Washington's nominating

7  procedure by avoiding the word "nominate."  <u>See</u> Democratic Party Opening Br., docket no.

8  55, at 15.[17]  The Democratic Party argues that "tinker[ing] with the wording of the definition

9  of 'primary' to avoid using the word 'nominating'" does not alter the substance of the primary

10  as a nominating procedure.  <u>Id.</u>

11          All Plaintiffs urge the Court to conclude that the primary under Initiative 872 is a

12  "nominating" primary, because it results in the selection of political party nominees, and

13  because the State and County Auditors, acting pursuant to state law, permit no nomination

14  process other than by the primary.

15          **2.      Political Party Function**

16          "[A] basic function of a political party is to select the candidates for public office to be

17  offered to the voters at general elections."  <u>Clingman</u>, 125 S. Ct. at 2042 (O'Connor, J.,

18  concurring) (quoting <u>Kusper v. Pontikes</u>, 414 U.S. 51, 58 (1973)).  Political parties are

19  entitled to First Amendment protections for any process which chooses the party's nominee.

20  <u>See Jones</u>, 530 U.S. at 575.  The party's "nominee" has also been referred to as the political

21  party's "own candidate," <u>id.</u> (quoting <u>Tashjian</u>, 479 U.S. at 235-36 (Scalia, J., dissenting)),

22  _____

23          [16] In its *amicus curiae* brief before the Supreme Court in <u>Jones</u>, the State described "the
    winnowing of candidates for the general election" as the only "aspect of party associational
24  activities affected by the blanket primary."  Brief of the States of Washington & Alaska as *Amici
    Curiae* in Support of Respondents, 2000 WL 340240, at *10.

25          [17] "Nominate" means "[t]o propose by name as a candidate, especially for election."  The
    American Heritage Dictionary of the English Language (4th ed. 2000).  "Winnow" means
26  "[t]o rid of undesirable parts," or "[t]o separate the good from the bad."  <u>Id.</u>

"standard bearer," <u>Timmons</u>, 520 U.S. at 359, "choice," <u>id.</u> at 372 (Stevens, J., dissenting), "ambassador to the general electorate," <u>Jones</u>, 530 U.S. at 575, and the "standard bearer who best represents the party's ideologies and preferences." <u>Eu v. San Francisco County Democratic Cent. Comm.</u>, 489 U.S. 214, 224 (1989) (internal quotations omitted).

The State contends that by Initiative 872, the State completely decoupled the process for deciding which candidates appear on the general election ballot from any party's nominating process. <u>See</u> State Response, docket no. 65, at 17. The State argues that the political parties remain free to select their own nominees, and to advocate on their behalf in the "qualifying" primary. <u>See id.</u> Alternatively stated, the State argues that when forced to choose between (1) preserving voter choice; and (2) using primaries to nominate party candidates, voters chose to preserve voter choice. However, this misapprehends the choice available to voters after <u>Jones</u> and <u>Reed</u>. A political party <u>does not</u> have a constitutional right to have its candidate on the general election ballot; however, it <u>does</u> have a constitutional right to nominate its "standard bearer." <u>Timmons</u>, 520 U.S. at 359. The position advocated by the State transforms the party's right to "nominate" into a right to endorse. The Supreme Court rejected a similar argument with regard to California's Proposition 198: "[t]he ability of the party leadership to endorse a candidate is simply no substitute for the party members' ability to choose their own nominee." <u>Jones</u>, 530 U.S. at 580. To relegate the members of a political party to a role of mere support for their preferred "standard bearer," would deny a party its role in selecting its representative. Party members associational right to choose the "standard bearer" of the party cannot be so infringed, nor can the ability to nominate a party's chosen candidate be so easily disposed of.

"There is simply no substitute for a party's selecting its own candidates." <u>Jones</u>, 530 U.S. at 581.

ORDER – 21

1

### 3.     Selection by Voters at Large

The State of Washington and the Grange also argue that "[t]he candidates who appear on the general election ballot are selected by the voters at large, not by the parties or by the voters as party members," and therefore the candidates are not the parties' nominees.  <u>See</u> State Response, docket no. 65, at 19 (emphasis omitted).  The Grange argues that Initiative 872 allows candidates to disclose the political party that the candidate prefers, and that unlike the blanket primary invalidated in <u>Reed</u>, Initiative 872 "does not require or force any political party to do anything."  <u>See</u> Grange Response, docket no. 70, at 32 (emphasis omitted).  These arguments have already been rejected by the Ninth Circuit in <u>Reed</u>.  343 F.3d at 1204 ("As for the State of Washington's argument that the party nominees chosen at blanket primaries 'are the nominees not of the parties but of the electorate,' that is the problem with the system, not a defense of it.").  That conclusion is equally applicable here.  The fact that voters at large will select the party's candidate indicates the Initiative 872 primary serves a nominating function.  The major political parties may not be deprived of their rights simply because the primary system "does not require or force [the parties] to do anything."

It is similarly unhelpful to rename the nominating primary a "qualifying" primary.  The Court must necessarily look beyond the characterization of the Initiative by its backers. Where the primary system under Initiative 872 selects from a slate of party candidates to advance two candidates to the general election, the system has the legal effect of "nominating" the party representatives in the partisan election.

### 4.     Political "Preference" of Party Candidates

The State argues that "[s]ince party affiliation plays no role in determining which candidates advance to the general election, the primary established by [Initiative 872] cannot in any way be regarded as determining party nominees," and that a statement of "party preference" does not imply nomination, endorsement, or support of any political party.  <u>See</u> State Response, docket no. 65, at 19-20.  The Grange also argues that any statement of party

ORDER – 22

preference by a candidate is absolutely protected by the First Amendment.  These arguments also must fail.  Party affiliation undeniably plays a role in determining the candidate voters will select, whether it is characterized as "affiliation" or "preference."  <u>Tashjian</u>, 479 U.S. at 220.  Party labels provide a shorthand designation of the views of party candidates on matters of public concern and play a role in the exercise of voting rights.  <u>Id.</u>  Candidates identified with their "preferred" party designation will "carry [the party] standard in the general election."  <u>See</u> Republican Opening Brief, docket no. 49, at 7.  Any attempt to distinguish a "preferred" party from an "affiliated" party is unavailing in light of Washington law.  <u>See</u> Wash. Rev. Code § 29A.24.030 ("Included on the standard form shall be . . . [f]or partisan offices only, a place for the candidate to indicate his or her major or minor party preference, or independent status"); Wash. Rev. Code § 29A.52.311 (County Auditors required to publish notice of the election with "the proper party designation" of each candidate); Wash Rev. Code § 29A.52.112(3) (Candidate expressing a political party "preference" will have that preference "shown after the name of the candidate on the primary and general election ballots."); <u>see also</u> Pharris Decl., docket no. 66, Ex. A (2004 Voters' Pamphlet at 11) ("The primary ballot [under Initiative 872] would include . . . major party and minor party candidates and independents.").

The association of a candidate with a particular party may be the single most effective way to communicate to voters what the candidate represents.  <u>See</u> <u>Rosen v. Brown</u>, 970 F.2d 169, 172 (6th Cir. 1992) ("[P]arty candidates are afforded a 'voting cue' on the ballot in the form of a party label which research indicates is the most important determinant of voting behavior.  Many voters do not know who the candidates are or who they will vote for until they enter the voting booth.").

The Grange's characterization of ballot labels of "party preference" as a permissible exercise of free speech must also fail.  An individual has no right to associate with a political party that is an "unwilling partner."  <u>See</u> <u>Duke v. Cleland</u>, 954 F.2d 1526, 1530 (11th Cir.

ORDER  −  23

1   1992), cert. denied, 502 U.S. 1086 (1992). This is not an infringement on the candidate's

2   rights because the political party has a right "to identify the people who constitute the

3   association and to limit the association to those people only." Id. at 1531 (internal quotations

4   omitted). Free speech rights of a candidate "do not trump the [political party's] right to

5   identify its membership based on political beliefs . . . ." Duke v. Massey, 87 F.3d 1226,

6   1232-33 (11th Cir. 1996). A candidate's free speech right to express a "preference" for a

7   political party does not extend to disrupting the party's First Amendment associational rights.

8   See generally Storer v. Brown, 415 U.S. 724, 736 (1974) (upholding California statute

9   designed to protect the parties and party system against the disorganizing effect of

10  independent candidacies launched by unsuccessful putative party nominees).

11          **5.      The Jones Dicta: "Nonpartisan Blanket Primary"**

12          The Court in Jones suggested in dicta that a "nonpartisan blanket primary" could

13  protect important state interests and voter choice, with "all the characteristics of the partisan

14  blanket primary, save the constitutionally crucial one: Primary voters are not choosing a

15  party's nominee." Jones, 530 U.S. at 585-86.

16          The State and the Grange rely heavily on the following statement from Jones:

17          [California] could protect [its interests] by resorting to a *nonpartisan*
            blanket primary. Generally speaking, under such a system, the State
18          determines what qualifications it requires for a candidate to have a
            place on the primary ballot – which may include nomination by
19          established parties and voter-petition requirements for independent
            candidates. Each voter, regardless of party affiliation, may then vote
20          for any candidate, and the top two vote getters (or however many the
            State prescribes) then move on to the general election. This system
21          has all the characteristics of the partisan blanket primary, save the
            constitutionally crucial one: Primary voters are not choosing a
22          party's nominee. Under a nonpartisan blanket primary, a State may
            ensure more choice, greater participation, increased "privacy," and
23          a sense of "fairness" – all without severely burdening a political
            party's First Amendment right of association.

24
    Jones, 530 U.S. at 585-86. According to the Grange, which sponsored Initiative 872, it
25
    "specifically drafted Initiative 872 to conform to [the Supreme Court ruling in Jones,]" and its
26

ORDER – 24

description of a *nonpartisan* blanket primary. <u>See</u> White Decl., docket no. 8, Ex. 4 ("Advantages of a Qualifying Primary for Washington State").

The Court gives great weight to the <u>Jones</u> Court's suggestion in analyzing the constitutionality of Initiative 872. However, a careful analysis of <u>Jones</u> and this "suggestion" indicates that it cannot save Initiative 872 from its demise.

Initiative 872 does not establish a "nonpartisan blanket primary." Primary voters are choosing a party's nominee. Initiative 872 burdens the rights of the political parties to choose their own nominee by compelling the parties to accept any candidate who declares a "preference" for the party, and allowing unaffiliated voters to participate in the selection of the party's candidate.

Plaintiffs' claim that Initiative 872 "denies party adherents the opportunity to nominate their party's candidate free of the risk of being swamped by voters whose preference is for the other party," <u>see</u> <u>Reed</u>, 343 F.3d at 1204, is well grounded. <u>Jones</u> allows little room for "outside" involvement in "intraparty" competition. <u>See</u> <u>Jones</u>, 530 U.S. at 572. This is confirmed by Justice Stevens' dissenting opinion. <u>See</u> <u>id.</u> at 598, n. 8 ("It is arguable that, under the Court's reasoning combined with <u>Tashjian</u>, the only nominating options open for the States to choose without party consent are (1) to not have primary elections; or (2) to have what the Court calls a 'nonpartisan blanket primary' . . . in which candidates previously nominated by the various political parties and independent candidates compete.") (Stevens, J., dissenting).

### 6. Initiative 872 Nominates Candidates

In all constitutionally relevant respects, Initiative 872 is identical to the blanket primary invalidated in <u>Reed</u>: (1) Initiative 872 allows candidates to designate a party preference when filing for office, without participation or consent of the party;[18] (2) requires

---

[18] The parties disagree as to whether minor party candidates are nominated through the nominating process described in Wash. Rev. Code §§ 29A.20.110 through 29A.20.201. <u>See</u>

1  that political party candidates be nominated in Washington's primary; (3) identifies

2  candidates on the primary ballot with party preference; (4) allows voters to vote for any

3  candidate for any office without regard to party preference; (5) allows the use of an open,

4  consolidated primary ballot that is not limited by political party and allows crossover voting;

5  and (6) advances candidates to the general election based on open, "blanket" voting.

6          Because Initiative 872 constitutes a nominating process, the Court must address the

7  question of Plaintiffs' associational rights, and the extent of the burden imposed on those

8  rights by Initiative 872.[19]

9  **B.     Does Initiative 872 violate the First Amendment by compelling a political party to
           associate with unaffiliated voters and members of other political parties in the
10         selection of its nominees?**

11         Plaintiffs argue Initiative 872 imposes an unconstitutional burden on the political

12  parties' First Amendment associational rights by (1) interfering with the parties' right to

13  determine the limits of voter association in the selection of the party candidates; and (2)

14

15

16  Section VI.C, infra.  The parties also disagree as to the applicability of Initiative 872 to minor
    parties.
17

18         [19] The political parties argue in the alternative that if Initiative 872 is not a nominating
    primary, it would be unconstitutional for violation of the parties' First Amendment
19  associational right to select candidates for public office.  It is well settled that political parties
    have a constitutionally protected right to nominate their candidates for partisan office.  See
20  Jones, 530 U.S. at 575; Clingman, 125 S. Ct. at 2042 (O'Connor, J., concurring)  (a basic
    function of a political party is to select candidates to be offered to voters in general elections);
21  Eu, 489 U.S. at 224 (party entitled to select the "standard bearer who best represents the party's
    ideologies and preferences.").

22         First Amendment associational rights are no less protected where the State effects a
    primary system that eliminates the party's right to nominate its own candidates.  In such a
23  circumstance, the affected political party is entitled to hold a caucus or convention to nominate
    its candidates for partisan office.  Similarly, the party is entitled to prevent non-affiliated
24  candidates from expressing a party preference or affiliation on the primary or general election
    ballot.  The choice of party nominee is "the crucial juncture at which the appeal to common
25  principles may be translated into concerted action, and hence to political power in the
    community."  Jones, 530 U.S. at 575 (internal quotation marks and citation omitted).  The State
26  cannot deprive political parties of their right to choose the candidate of their choice.

ORDER – 26

imposing forced political association with any candidate who may self-designate a party

"preference," which will be displayed on the ballot.[20]

### 1.    Candidate Selection

The freedom to join together in furtherance of common political beliefs "necessarily

presupposes the freedom to identify the people who constitute the association," Tashjian, 479

U.S. at 214, and "the right not to associate" with individuals who do not share common

beliefs.  Jones, 530 U.S. at 574.

> Freedom of association would prove an empty guarantee if
> associations could not limit control over their decisions to those who
> share the interests and persuasions that underlie the association's
> being.

Id. at 574-75.  "[A] basic function of a political party is to select the candidates for public

office to be offered to the voters at general elections."  Clingman, 125 S. Ct. at 2042

(O'Connor, J., concurring) (internal quotations omitted).  First Amendment associational

rights in this context allow the party to select the "standard bearer who best represents the

party's ideologies and preferences."  Eu, 489 U.S. at 224.

Initiative 872 nominates political party candidates for office, and allows voters to

choose any candidate, regardless of political affiliation.  Initiative 872 therefore

impermissibly "denies party adherents the opportunity to nominate their party's candidate free

of the risk of being swamped by voters whose preference is for the other party."  Reed, 343

F.3d at 1204.  "In no area is the political association's right to exclude more important than in

the process of selecting its nominee."  Jones, 530 U.S. at 575.

---

[20] The State of Washington admits that "if the Court found . . . a [non-party] candidate's
option to express a political party preference . . . sufficient to render the 'top two' primary a
party nomination system, that would indeed trigger a need to respect the associational interests
of the political parties."  See State Response, docket no. 65, at 25.  However, the State contends
that it would not necessarily follow that Initiative 872 is unconstitutional.  Id. at 25 n. 19;
see also Section VII, infra.

ORDER – 27

1    Where a statutory scheme imposes a severe burden on core First Amendment rights,

2    the scheme must be found unconstitutional unless the State affirmatively demonstrates that

3    the scheme is narrowly tailored to advance a compelling state interest.  <u>Reed</u>, 343 F.3d at

4    1204.  The State of Washington and the Washington State Grange argue that Initiative 872

5    does not impose a severe burden on core First Amendment rights, but do not argue that

6    Initiative 872 is narrowly tailored to meet a compelling state interest.  The Court concludes as

7    a matter of law that Initiative 872 "forces political parties to associate with—to have their

8    nominees, and hence their positions, determined by—those who, at best, have refused to

9    affiliate with the party, and, at worst, have expressly affiliated with a rival."  <u>Jones</u>, 530 U.S.

10    at 577.

11        **2.    Candidate Party Preference**

12    Plaintiffs argue that Washington's filing statute, Wash. Rev. Code § 29A.24.030,[21]

13    violates the parties' First Amendment associational rights by forcing the political parties to

14    associate with any candidate who expresses a "preference" for a political party.  Initiative 872

15    provides that any candidate may self-designate a party preference and that party's name will

16    be printed on public ballots and in voters' guides after the candidate's name.  <u>See</u> Wash. Rev.

17

18        [21] Initiative 872 revised Wash. Rev. Code § 29A.24.030, Washington's filing statute, to
include on the ballot "a place for the candidate to indicate his or her major or minor party
19    preference, or independent status," <u>see</u> Initiative 872, Sec. 9(3), without "cognizance" of the
statute's repeal by 2004 c 271 § 193 in favor of Washington's new filing statute: Wash. Rev.
20    Code § 29A.24.031. <u>See</u> Wash. Rev. Code § 29A.24.030, Reviser's Note. Under statutory rules
of construction in Wash. Rev. Code § 1.12.025, amended statute Wash. Rev. Code § 29A.24.030
21    was given effect as amended by Initiative 872.  <u>See</u> Wash. Rev. Code § 29A.24.030,
Reviser's Note;  <u>see also</u> Initiative 872, Sec. 9(3).
22
        The difference between Washington's two filing statutes is not significant to the Court's
23    analysis.  <u>Compare</u> Wash. Rev. Code § 29A.24.030 ("major or minor party preference") <u>with</u>
Wash. Rev. Code § 29A.24.031 ("party designation").  The parties base their analysis on
24    Washington's filing statute as amended by Initiative 872, <u>see</u> Democratic Party Opening Br.,
docket no. 55, at 20-21; or both statutes together.  <u>See</u> Republican Opening Br., docket no. 49,
25    at 8-11.  The Court, however, will limit its consideration to Washington's filing statute as
amended by Initiative 872: Wash. Rev. Code § 29A.24.030.
26

Code § 29A.24.030 ("Included on the standard form shall be . . . [f]or partisan offices only, a place for the candidate to indicate his or her major or minor party preference, or independent status"); Wash Rev. Code § 29A.52.112 (Candidate expressing a political party "preference" will have that preference "shown after the name of the candidate on the primary and general election ballots."). County Auditors are also required to publish notice of the election with "the proper party designation" of each candidate. Wash. Rev. Code § 29A.52.311.

In this case the political parties seek relief beyond protecting their rights to nominate candidates. The parties seek to exclude all other candidates on the primary ballot from using similar party preferences. Neither the State nor the Grange disputes that a political party has an inherent right to nominate its own candidates. See State Response, docket no. 65, at 24; Grange Response, docket no. 70, at 27. The right to nominate is a constitutionally protected right of association. Under Initiative 872, political parties are given no choice with respect to whether such public association is made. The parties argue that the filing statutes force the parties to be affiliated with candidates that may qualify under party rules, or may be hostile to the party. The Defendants argue that "forced association" will not occur because "party preference" statements do not imply the nomination, endorsement, or support of any political party. See State Response, docket no. 65, at 20. However, rather than meet their burden to justify Initiative 872, the State and the Grange argue that candidates who appear on the primary and general election ballots are not candidates "of the party," even though they are identified on the ballot as associated with the party. This defense was previously rejected in Reed. 343 F.3d at 1204; see also Section VI.A.3, supra.

Party affiliation plays a role in determining which candidates voters select, whether characterized as "affiliation" or "preference." Tashjian, 479 U.S. at 220. The top two nature of the primary does not cure this defect. Parties cannot be forced to associate on a ballot with unwanted party adherents. See Section VI.A.4, supra. The right to select the candidate that will appear on the ballot is important to political parties that invest substantial money and

ORDER – 29

effort in developing a party name.  Party name and affiliation communicate meaningful
political information to the electorate.[22]  The Democratic Party argues that it has expended
considerable time and expense to develop a coherent set of goals and principles that guide the
party, and that candidates asserting an affiliation with the party will receive numerous votes
based solely on their proclaimed affiliation with the party, and implied adoption of its
message and principles.  Even non-commercial associations are entitled to protect their name
against misappropriation and misuse.  See, e.g., Most Worshipful Prince Hall Grand Lodge v.
Most Worshipful Universal Grand Lodge, 62 Wash. 2d 28, 35 (Wash. 1963) ("The underlying
concept is that of unfair competition in matters in which the public generally may be deceived
or misled."); Hurley v. Irish-American Gay, Lesbian & Bisexual Group, 515 U.S. 557, 566
(1995) (private association could not be required to admit a parade contingent expressing
message not of the organizers' choosing); Boy Scouts of Am. v. Dale, 530 U.S. 640, 659
(2000) (First Amendment protects Boy Scouts' right to exclude leader whose presence would
express a message at odds with Boy Scout policies).  The Court is persuaded by Plaintiffs'
arguments that allowing any candidate, including those who may oppose party principles and
goals, to appear on the ballot with a party designation will foster confusion and dilute the
party's ability to rally support behind its candidates.

Initiative 872 imposes a severe burden on the Plaintiffs' First Amendment right to
associate on two separate grounds: (1) Initiative 872 forces political parties' to have their
nominees chosen by voters who have refused to affiliate with the party and may have
affiliated with a rival; and (2) Initiative 872 forces the parties to associate with any candidate
who expresses a party "preference."  Because Initiative 872 is not narrowly tailored to

---

[22] The Libertarian Party notes that the name "Libertarian Party" is a registered trademark, and accordingly argues that the Libertarian Party has a proprietary right to determine who may use the name, and for what purposes it may be used.  See Libertarian Opening Br., docket no. 52, at 14.

ORDER – 30

1    advance a compelling state interest, the Court concludes that it is unconstitutional.  Reed, 343

2    F.3d at 1203-04.

3    **C.    Initiative 872 and Minor Parties**

4        The various parties in this litigation dispute Initiative 872's impact on minor parties.

5    The Plaintiffs argue that Initiative 872's provision that only the top two candidates in the

6    primary will be placed on the general ballot unconstitutionally restricts minor parties' access

7    to the ballot.  Additionally, in its Supplement to its Motion for Summary Judgment, the

8    Republican Party requests a finding that Initiative 872 is unconstitutional because it violates

9    the constitutional right to equal protection under the law.  The Republican Party contends that

10   "Initiative 872 violates the Equal Protection Clause by allowing minor political parties to

11   nominate candidates and control their message, but denying the same right to the [major

12   political parties.]"  See Republican Supplement, docket no. 63, at 4.  The Grange and the

13   State argue that Initiative 872 supplanted and superseded any inconsistent provisions in the

14   Revised Code of Washington, including those that treat minor parties differently.  See State

15   Response, docket no. 65, at 31 n.23; Grange Response, docket no. 70, at 21 n.30.

16       In order to evaluate the parties' allegations regarding Initiative 872's treatment of

17   minor parties, the Court must determine whether Initiative 872 would provide different rights

18   to the various political parties.  The question presented is whether Initiative 872 repealed

19   expressly or by implication the minor party nominating provisions.[23]

20       Initiative 872 did not expressly repeal, amend, or otherwise address the minor party

21   nominating statutes, Wash. Rev. Code §§ 29A.20.110-29A.20.201.  Initiative 872, Sec. 17.

22   The State and the Grange contend that Initiative 872 repealed by implication all of the

23

24       [23] The Montana system, adopted in 2004, treats minor party nominees differently.  Under
     the Montana system, minor party nominees would still be selected through a nominating
25   convention.  Wash. Rev. Code § 29A.20.121(1).  However, they would then proceed directly
     to the general ballot after submitting a nominating petition containing the requisite number of
26   signatures.  Wash. Rev. Code §§ 29A.20.121, 29A.20.141.

ORDER – 31

previous minor party nominating statutes because the Initiative covers the entire subject matter of primary and general election procedures and was intended to supersede the prior legislation on the subject.

The language of Initiative 872 appears to preclude minor party nominees from appearing on the general election ballot without first having appeared on a primary election ballot. Section 5 of Initiative 872 defines a primary as "a procedure for winnowing candidates for public office to a final list of two as part of a special or general election." Initiative 872, Sec. 5. The language of a "final list of two" candidates for "public office" does not appear to leave room for additional, minor party candidates on the general election ballot. Section 6(1) states that, "[f]or any office for which a primary was held, only the names of the top two candidates will appear on the general election ballot." Initiative 872, Sec. 6(1). This language implies that in an election for any office in which a primary was held, only two candidates may appear on the general election ballot. Initiative 872, Sec. 7(2) ("Whenever candidates for a partisan office are to be elected, the general election must be preceded by a primary conducted under this chapter. Based upon votes cast at the primary, the top two candidates will be certified as qualified to appear on the general election ballot . . ."). Finally, Section 9(3) refers to minor party candidates and provides that the form for declaration of candidacy must have, "[f]or partisan offices only, a place for the candidate to indicate his or her major or minor party preference, or independent status." Initiative 872, Sec. 9(3).

The State of Washington 2004 Voter's Pamphlet states in part that "[t]he initiative would replace the system of separate primaries for each party" and that "[t]he primary ballot would include all candidates filing for the office, including both major party and minor party candidates and independents." Pharris Decl., docket no. 66, Ex. A (2004 Voters Pamphlet at 11). Finally, the explanation statement provides "[t]he measure would replace existing

ORDER – 32

1  provisions that candidates of each major political party, as well as any minor party or

2  independent candidates who qualify, appear on the general election ballot."[24]  Id.

3      The Montana system's provision dictating that minor party candidates proceed directly

4  to the general election ballot is in direct conflict with the primary system enacted under

5  Initiative 872 in which all candidates for partisan office must submit to the primary in order to

6  winnow the final list down to two.  Similarly, under the prior blanket primary system, minor

7  party nominees advanced to the general ballot if they received at least one percent of the total

8  vote cast in the primary for that office.  This provision is also inconsistent with Initiative

9  872's provisions allowing only the top two candidates to advance to the general election.

10      Repeal by implication is strongly disfavored.  State v. Lessley, 118 Wash. 2d 773, 782

11  (1992); Washington State Welfare Rights Org. v. State, 82 Wash. 2d 437, 439 (1973) (internal

12  citations omitted).  Under Washington law, a statute will be deemed to be impliedly repealed

13  only if: "[T]he later act covers the entire subject matter of the earlier legislation, is complete

14  in itself, and is evidently intended to supersede the prior legislation on the subject, or unless

15  the two acts are so clearly inconsistent with, and repugnant to, each other that they cannot, by

16  a fair and reasonable construction, be reconciled and both given effect."  Washington

17  Federation of State Employees v. The Office of Financial Management, 121 Wash. 2d 152,

18  165 (1993).

19      The Court concludes as a matter of law that it was the intent of the voters who enacted

20  Initiative 872 that it be a complete act in itself and cover the entire subject matter of earlier

21  legislation governing minor parties.[25]

22  _____

23      [24] When the language of an initiative is ambiguous, the Court may look to the voters'
pamphlet to ascertain the intent of the voters who approved it.  Sane Transit v. Sound Transit,

24  151 Wash. 2d 60, 90 (2004) (citing Amalgamated Transit Union Local 587 v. State, 142 Wash.
2d 183, 205-06 (2000)).

25      [25] The Court reluctantly holds that Initiative 872 repealed by implication the minor party
nominating statutes.  There are undoubtedly many voters in Washington whose political

26  philosophies do not neatly square with those of either of the two major political parties, as well

1    Because the Court declares Initiative 872 unconstitutional on other grounds, and

2    further concludes that minor parties would be treated the same as all other parties if it was

3    constitutional, the Court does not reach the equal protection argument raised by the

4    Republican Party.  Similarly, the Court does not reach the minor party ballot access issue.

5    **VII.    The Severability of Initiative 872**

6        If any portions of Initiative 872 are unconstitutional, the Court must determine whether

7    the unconstitutional provisions can be severed from the remaining constitutional provisions.

8    The State, the Grange, and the Democratic Party all contend that Initiative 872 is severable.

9    The Republican Party argues that it is not severable.

10       Washington law governs the question of the severability of a Washington initiative.  In

11   In re Parentage of C.A.M.A., 154 Wash. 2d 52 (2005), the Washington Supreme Court

12

13   _____

14   as voters who find these parties' philosophies antithetical to their own vision of good
     governance.  For many voters, the minor parties have provided a vital means to advocate on
     behalf of their vision for this State.  The Supreme Court has noted that minor parties have played
15   an indispensable role in the nation's political process:

16               All political ideas cannot and should not be channeled into the
                 programs of our two major parties.  History has amply proved the
17               virtue of political activity by minority, dissident groups, who
                 innumerable times have been in the vanguard of democratic thought
18               and whose programs were ultimately accepted . . .  The absence of
                 such voices would be a symptom of grave illness in our society.
19

20   Sweezy v. New Hampshire, 354 U.S. 234, 250-51 (1957).  Initiative 872, if otherwise valid
     would significantly alter Washington State's political landscape and severely limit the important
21   role of minor parties in the State's political process.  This would remove from the general
     election the ability to choose candidates from a broad political spectrum.  The scope of voters'
22   disenfranchisement would be enormous.  As Governor Locke noted in vetoing a similar top two
     alternative in 2004:

23               Minority parties bring diverse perspectives to political debate and
                 additional choice to voters.  They should not be foreclosed from
24               meaningful participation in the democratic process.

25   E.S.B. 6453, 58th Leg., 2004 Reg. Sess. (Wash. 2004) (Governor's Veto Message).  However,
     whether and to what extent the State should limit minority participation is obviously a policy
26   issue to be decided by the Legislature or by the voters by Initiative.

     ORDER – 34

described the test to determine whether unconstitutional statutory provisions can be severed as follows:

> Ordinarily, only the part of an enactment that is constitutionally infirm will be invalidated, leaving the rest intact. An unconstitutional provision may not be severed, however, if its connection to the remaining, constitutionally sound provision is so strong "that it could not be believed that the legislature would have passed one without the other; or where the part eliminated is so intimately connected with the balance of the act as to make it useless to accomplish the purposes of the legislature." Also, the court is obliged to strike down the entire act if the result of striking only the provision is to give the remainder of the statute a much broader scope.

Guard v. Jackson, 83 Wash. App. 325, 333 (1996) (footnotes omitted) (quoting Leonard v. City of Spokane, 127 Wash. 2d 194, 201 (1995)).

In addition, unless the Court can conclude that the voters in the initiative process would have passed Initiative 872 absent any unconstitutional provisions, the proper remedy is invalidation rather than changing the Initiative. Griffin v. Eller, 130 Wash. 2d 58, 69-70 (1996). See also National Advertising Co. v. Orange, 861 F.2d 246 (9th Cir. 1988).

Initiative 872 does not have a severability clause. The presence of an applicable severability clause is some evidence that the voters would have enacted the constitutional portions of the Initiative without the unconstitutional portions, but a severability clause is not necessary in order to meet the severability test. See In re Parentage of C.A.M.A., 154 Wash. 2d at 67-68.

When determining if the Initiative is severable, the Court must take care not to rewrite legislation. "Under our constitutional framework, federal courts do not sit as councils of revision, empowered to rewrite legislation in accord with their own conceptions of prudent public policy." United States v. Rutherford, 442 U.S. 544, 555 (1979). To apply these rules in the context of this case, the Court must look at what must be severed for Initiative 872 to meet constitutional standards and how the remainder of the Initiative would realize the intent of voters who enacted it. The suggestions for severance offered by the parties fall short.

ORDER – 35

1    The State argues that the Court should "allow the State to adjust the specific problem

2  the Court found [in Initiative 872] while maintaining the basic machinery of the 'top two'

3  primary." State Response, docket no. 65, at 34. The State suggests that "the portions of

4  Initiative 872 that appears [sic] to draw the most fire are Sections 7 and 9, the provisions that

5  permit candidates to declare their 'political party preference' and provide that this information

6  will appear on the ballot." Id.

7    The Grange argues that the Court should preserve Sections 1 and 2 of the Initiative,

8  which it argues express the Initiative's intent. Grange's Response, docket no. 70, at 38. The

9  Grange also argues that the only allegedly offending sections of Initiative 872 are Section

10  7(3), providing for candidates to indicate a political preference which will be shown on

11  ballots "for the information of the voters," and Section 11, which provides that the

12  candidate's party "preference" will be included in the State voters' pamphlet. Id. at 36.

13    The Democratic Party argues that if the Court concludes that the voters were primarily

14  interested in limiting the number of candidates on the general election ballot to no more than

15  two and that voters viewed as only incidental the creation of a non-party member's right to

16  choose a party's candidate, the Court could sever the Initiative. Democratic Reply, docket no.

17  75, at 10. The Democratic Party argues that the Court "need only hold that the Initiative's

18  requirement that a political party name be printed after a candidate's name is applicable if,

19  and only if, the candidate has first been selected by the political party whose name he or she

20  seeks to invoke, pursuant to the rules of that party." Id. Implementing this recommendation

21  would require the Court to fundamentally rewrite the Initiative.

22    Several portions of Initiative 872 are unconstitutional because they violate Plaintiffs'

23  First Amendment rights. In order to sever the offending sections of Initiative 872, the Court

24  would need to sever most of Section 4, which defines a "partisan office" as one "for which a

25  candidate may indicate a political party preference on his or her declaration of candidacy and

26  have that preference appear on the primary and general election ballot in conjunction with his

ORDER – 36

1   or her name"; Section 5, which redefines Primary or Primary Election, replaces "nominating"

2   with "winnowing," and allows the right to cast a vote for any candidate for each office

3   without any limitation based on party preference or affiliation, of either the voter or the

4   candidate; Sections 7(2) and (3), which affix a candidate's party preference next to that

5   candidate's name on both the primary and the general election ballot; Section 9(3), which

6   provides a place on the declaration of candidacy for a candidate to state his or her major or

7   minor party preference; Section 11, which states that the voters' pamphlet must also contain

8   the political party preference or independent status of the candidate where the candidate

9   expresses a preference; and Section 12, which provides that the certified list of candidates

10  shall include each candidates' party preference.  Initiative 872, Secs. 4, 5, 7(2), 7(3), 9(3), 11,

11  12.  The effect of these deletions would be to substantially dismantle the partisan primary

12  system adopted by Initiative 872.  These deletions would eliminate any reference to party

13  preference or affiliation, and would convert a partisan election process into a nonpartisan

14  election process.

15       The Court must determine whether the connection between the potentially severable

16  parts "and the remaining constitutionally sound provision is so strong 'that it could not be

17  believed that [the voters] would have passed one without the other; or where the part

18  eliminated is so intimately connected with the balance of the act as to make it useless to

19  accomplish the purposes of [the voters].'"  Guard v. Jackson, 83 Wash. App. 325, 333 (1996).

20  "When the people approve an initiative measure, they exercise the same power of sovereignty

21  as the legislature does when it enacts a statute.  Once enacted, initiatives are interpreted

22  according to the same rules of statutory construction as apply to the legislature's enactments.

23  Thus, the court's aim is to determine the collective intent of the people who enacted the

24  measure."  McGowan v. State, 148 Wash. 2d 278, 288 (2002) (internal citations omitted).

25  The Court may look to the plain language of the Initiative itself in order to determine the

26  intent of the voters who enacted it.  Id.

ORDER – 37

1    The Court concludes as a matter of law that Initiative 872 is not severable.  The

2  deletion of the unconstitutional portions of the Initiative leaves virtually nothing left of the

3  system approved by the voters.

## VIII.  Effect of the Invalidity of Initiative 872

5    Declaring Initiative 872 unconstitutional will not leave Washington without a primary

6  system.  Enjoining the implementation of Initiative 872 will return Washington to the

7  Montana primary system enacted before Initiative 872 was approved by the voters.

8    The effect of the invalidity of a state statute is governed by state law.  Erie R. Co. v.

9  Tompkins, 304 U.S. 64, 78 (1938).  Washington law holds that an invalid statute is a nullity.

10  "It is as inoperative as if it had never been passed."  State v. Speed, 96 Wash. 2d 838, 843

11  (1982) (citing State ex. rel. Evans v. Brotherhood of Friends, 41 Wash. 2d 133, 143 (1952)).

12  The Washington Supreme Court has held that the natural effect of this rule is that once the

13  invalid statute has been declared a nullity, it leaves the law as it stood prior to the enactment

14  of the invalid statute.  Id. (citing Boeing Co. v. State, 74 Wash. 2d 82, 89 (1968)).  In this

15  case, the Court's holding that Initiative 872 is unconstitutional renders it a nullity, including

16  any provisions within it purporting to repeal sections of the Revised Code of Washington.

17  Therefore, the law as it existed before the passage of Initiative 872, including the Montana

18  primary system, stands as if Initiative 872 had never been approved.

## IX.  Conclusion

20    For the reasons stated in this Order, the Court concludes as follows:

21    1.    The implementation of Initiative 872 will severely burden the First Amendment

22        rights of Washington's political parties by (a) allowing any voter, regardless of

23        their affiliation to a party, to choose a party's nominee, Jones, 530 U.S. at 586;

24        and (b) allowing any candidate, regardless of party affiliation or relationship to

25        a party, to self-identify as a member of a political party and to appear on the

26

ORDER − 38

primary and general election ballots as a candidate for that party.  <u>Reed</u>, 343
F.3d at 1204.

2.    Initiative 872 is not narrowly tailored to serve any legitimate and compelling
state interest.  <u>Timmons</u>, 520 U.S. at 358.

3.    Initiative 872 is unconstitutional in violation of the First Amendment to the
United States Constitution.

For the reasons set forth herein, the Court GRANTS Plaintiffs' Motions for Summary
Judgment, docket nos. 49, 52, and 55 to the extent provided in this Order, and DENIES the
State's Cross-Motion for Summary Judgment, docket no. 65.

The Court hereby GRANTS all Plaintiffs a Preliminary Injunction as follows:

1.    The Court enjoins the State of Washington, or any political subdivision of the
State, from enforcing, implementing, or conducting any election pursuant to the
provisions of Initiative 872, as codified in Title 29A, Wash. Rev. Code.

2.    The Court enjoins the State of Washington, or any political subdivision of the
State, from enforcing or implementing the filing statute under Initiative 872,
Wash. Rev. Code § 29A.24.030, as part of any primary or general election.

3.    This injunction shall remain in effect until a permanent injunction is entered
consistent with this Order.

4.    Plaintiffs are directed to prepare, serve, and file a proposed permanent
injunction consistent with this Order by July 22, 2005.  Defendants may file any
objection by July 27, 2005 and the Court will thereafter enter a permanent
injunction.

///

///

///

///

ORDER – 39

1

2       IT IS SO ORDERED.

3       DATED this 15th of July, 2005.

4

5

6                                              _____
                                               THOMAS S. ZILLY
7                                              UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER – 40